UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                                         PLAINTIFF

v.                                                                                 CIVIL ACTION NO. 3:06-CR-168-S

TOBIAS JONES                                                                         DEFENDANT

## MEMORANDUM OPINION

This matter is before the court upon the motion of the defendant, Tobias Jones ("Jones"), to suppress all physical and testimonial evidence obtained as a result of his stop and arrest on November 29, 2006. The Government concedes that the initial stop and search occurred without a warrant but argues that the stop and search were permissible pursuant to *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 1884-85, 20 L.Ed.2d 889 (1968).

## BACKGROUND

On November 29, 2006, Louisville Metro Police Department (LMPD) Detective Jonathan Mattingly was working in a drug reduction area of Seventh and Kentucky Streets. He and other officers were working this area due to a number of a complaints regarding drug trafficking in and around an apartment building in the vicinity. At approximately 2:30 p.m., Detective Mattingly observed a maroon Nissan pull up on Seventh Street. The car was occupied by a white female driver and two black male passengers. One black male, later identified as Jones, got out of the back seat of the car, entered a house where he stayed a couple minutes, and came back out.

As Jones exited the house and started back to the car, Detective Mattingly talked to LMPD Detective McKinney on a walk-talkie channel informing him that he was going to "go down and see what was going on." Detective Mattingly went south on Seventh Street and pulled in front of the car, while Detective McKinney circled around the back side of Ormsby and pulled in behind the car. As Detective Mattingly pulled up in front, Jones got out of the back passenger's seat. Detective

Mattingly identified himself and told Jones to stop. Jones complied. Observing Jones holding his stomach, Detective Mattingly conducted a pat down of Jones, which yielded two weapons, one in his waistband and one in the front pocket of his hooded sweatshirt, and a bag of marijuana in his right front pocket. Detectives Mattingly and McKinney also noticed a strong smell of marijuana coming from the car, the back door to which remained open when Jones stepped out. A search of the car revealed a bag of marijuana.

As Detective Mattingly began to handcuff Jones, Jones asked if the Detective could be easy given that he had been shot a couple weeks ago and still had a wound in his chest or stomach. The detectives obtained identification from everyone who had been in the car and ran a search for outstanding warrants. Upon learning that Jones had a prior felony conviction and that one of the guns was stolen, the detectives contacted ATF. Detective Mattingly also noticed from the identification that one of the individuals lived on Bono Street in Southern Indiana, where a shooting had occurred a few days earlier. The detectives called New Albany police who expressed an interest in meeting the LMPD detectives at their division office.

All three individuals were taken to the division office. Thereafter, New Albany detectives arrived and interviewed Jones. Special Agent Justin Demaree from ATF also participated in an interview of Jones. Law enforcement officials advised Jones of his constitutional rights prior to asking any questions. Jones agreed to speak with the agents. During the interview, Jones admitted that he was a convicted felon currently on probation. He stated that he had bought the guns found on him "on the streets," paying one hundred fifty dollars ($150.00) for them. When asked if he knew whether the guns were stolen or used in a crime, he responded that he suspected they were due to their cheap price. Special Agent Demaree arrested Jones for being a felon in possession of firearms.

## ANALYSIS

An officer is permitted to "stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989) (citing *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 1884-85, 20 L.Ed.2d 889 (1968)). "*Terry* holds that police officers who have 'reasonable suspicion' of criminal activity may detain and pat down the individual suspected of illicit activity." *Lee v. Hefner*, 136 Fed. Appx. 807, 811 (6th Cir. 2005). "While reasonable suspicion must be based on more than 'ill-defined hunches,' officers may 'draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *United States v. Perez*, 440 F.3d 363, 371 (quoting *United States v. Cortez*, 449 U.S. 411, 418 (1981)).

Courts must look at the totality of the circumstances when assessing whether reasonable suspicions exists, and when doing so "must determine whether the individual factors, taken as a whole, give rise to reasonable suspicion, even if each individual factor is entirely consistent with innocent behavior when examined separately." *Perez*, 440 F.3d at 371. The individual factors cited by the Government include:

    (1)    Citizen complaints regarding drug trafficking in and around an apartment building in the vicinity where Jones was stopped.

    (2)    A vehicle occupied by a white female driver and two black male passengers, one of whom was Jones. A common way drugs are purchased is through a process called "flagging," where a person looking drugs will drive around a high drug area until he or she is spotted by someone who flags down another person who gets into the car and rides with the driver to a home where the drug transaction takes place. White individuals seeking to purchase drugs at a housing project often utilize this process.

>     (3)   Jones' conduct in getting out of the back seat of the car, entering a house where he stayed for only a couple minutes, coming back out, and re-entering the back seat of the car. A common way for drugs to be sold involves a person going into a house, staying a short period of time, and returning to a vehicle.

These factors, however, even when viewed as a whole, do not give rise to reasonable suspicion. Although courts have found "flagging" to be a basis for reasonable suspicion, here, neither detective observed "flagging." Detective Mattingly merely saw the racial makeup of a vehicle, which led him to suspect that the occupants had been involved in a flagging scenario. Without any "flagging," we are left with (1) a vehicle occupied by a white female driver and two black male passengers and (2) Jones' conduct in leaving the backseat of a vehicle and entering a house located in a high drug area for a short period of time only to re-emerge from the house and re-enter the vehicle. Taken together, even in the context of citizen complaints, these do not form a sufficient basis for reasonable suspicion. Jones' stop and search is unconstitutional and cannot be saved under *Terry*.

Thus, we will grant Jones' Motion to Suppress, because any evidence obtained from a tainted stop, seizure, or arrest must be suppressed as fruit of that "poisonous tree." *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 44 (1963). A separate order consistent with this opinion will be entered this date.